1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              SOUTHERN DISTRICT OF CALIFORNIA
10

11  FOSTER RICH,                              Civil        09-CV-0652-AJB (BGS)
                                              No.
12                            Plaintiff,
                                              **ORDER DETERMINING
13           v.                               DISCOVERY DISPUTE**
14  RALPH W. SHRADER, *et al.*,
15                            Defendant.

16                        **I. INTRODUCTION**

17           On May 22, 2013, counsel for all parties contacted the Court regarding

18  multiple discovery disputes between Plaintiff Foster Rich ("Plaintiff") and Defendants

19  Ralph W. Shrader ("Shrader"), Joseph E. Garner ("Garner"), and Booz Allen Hamilton,

20  Inc. ("BAH") (collectively, "Defendants").  Plaintiff is seeking discovery in order to

21  support his two remaining claims against Defendants, which are for breach of contract

22  against BAH and tortious interference with contract against Shrader and Garner.  (See

23  Doc. No. 54.) On May 22, 2013, the Court ordered the parties to submit a joint motion

24  regarding their discovery dispute, including briefing on each party's position.  (Doc.

25  No. 96.)  On May 30, 2013, the parties timely submitted their joint motion.  (Doc. No.

26  98.)  After reviewing the briefing, the Court DENIES Plaintiff's request to extend

27  discovery to take the deposition of Mr. Nemec and DENIES Plaintiff's request to

28

                                      1

1    compel Defendants to produce documents responsive to his First Request for
2    Production of Documents created after March 31, 2005.   The Court GRANTS
3    Plaintiff's request numbers 124, 128, 130, 133, and 140 as detailed below, but the Court
4    DENIES Plaintiff's request to compel Defendants to produce documents responsive to
5    the remainder of Plaintiff's Second Request for Production of Documents.

## II. BACKGROUND

7          Plaintiff filed the present action on April 1, 2009, against Defendants Shrader,
8    Garner, and BAH, along with other defendants who are no longer in this action.  (Doc.
9    No. 1.)  On December 9, 2009, Plaintiff filed an Amended Complaint.  (Doc. No. 16.)
10   After all of the defendants filed a motion to dismiss, Plaintiff filed a Second Amended
11   Complaint on October 16, 2010, alleging causes of action for: (1) violations of the
12   Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et*
13   *seq.*; (2) conspiracy under RICO; (3) breach of ERISA implied covenant of fair dealing;
14   (4) breach of ERISA fiduciary duty; (5) securities fraud; (6) tortious interference with
15   contract; and (7) breach of contract.  (Doc. No. 38.)  Underlying all of Plaintiff's claims
16   is an alleged master plan by Shrader, Garner, and the other defendants to secretly push
17   out senior partners of BAH in order to reduce the amount of outstanding stock, which
18   the company repurchased at book value.  (Id.)  Eventually, there was a sale of a portion
19   of BAH, and those still holding BAH stock at that time, including Shrader and Garner,
20   had their stock purchased for a much higher price, allegedly at the expense of the
21   former partners.  (Id.)

22         All of the defendants filed a motion to dismiss the Second Amended
23   Complaint on February 17, 2011.  (Doc. No. 48.)  On September 22, 2011, the Court
24   granted in part the Motion to Dismiss, dismissing all claims except tortious interference
25   with contract against Shrader and Garner and breach of contract against BAH, both of
26   which are based on Plaintiff's employee evaluation of September, 2003.  (Doc. No. 54.)

27         After Defendants filed their Answer to the remaining causes of action, the
28   Court issued a scheduling order on January 23, 2013, and discovery commenced.  (Doc.

No. 84.)  The parties were given until May 23, 2013, to complete all fact discovery. (Id.)  On May 21, 2013, the parties submitted a joint motion requesting to extend the fact discovery deadline to allow Plaintiff to take two additional depositions which were scheduled prior to the close of discovery, but were unable to be taken because the deponents were out of the country.  (Doc. No. 95.)  The Court granted the joint motion and extended the fact discovery deadline to May 31, 2013, for the limited purpose of taking those two depositions.  (Doc. No. 97.)

On May 22, 2013, the parties brought multiple discovery disputes to the attention of the Court as required by Chambers Rules.  The parties represented that they met and conferred prior to contacting the Court.  The first dispute regards Plaintiff's desire to take the deposition of a plaintiff from a separate case, Mr. Nemec, which was not held prior to the fact discovery deadline of May 23, 2013.  The second dispute involves whether Plaintiff waived his ability to challenge Defendants' objection to discovery requested in Plaintiff's First Request for the Production of Documents.  The remaining disputes regard Plaintiff's numerous requests in his Second Request for the Production of Documents, many which mirror requests made by plaintiffs bringing suits against Defendant(s) in two separate cases.  The Court ordered the parties to brief these issues.  (Doc. No. 96.)  The parties timely filed their joint motion on May 30, 2013. (Doc. No. 98.)

### III. DISCUSSION

**A.  Request to Extend Discovery Date to Take Deposition of Mr. Nemec**

The parties' first dispute involves Plaintiff's request to take the deposition of Mr. Nemec.  The Court does not find good cause as required by Fed. R. Civ. P. 16(b)(4) to extend the discovery deadline to allow the deposition of Mr. Nemec.  The Federal Rules of Civil Procedure allow a schedule to be modified for good cause and with a judge's consent.  Fed. R. Civ. P. 16(b)(4).  In order to demonstrate good cause, a party must demonstrate its diligence in taking discovery since the case management conference, its diligence in propounding or noticing the particular outstanding

1    discovery, and explain why the parties could not exchange the particular discovery
2    before the discovery cut off date.  The Court will only extend discovery if there is good
3    cause to do so.

4         Plaintiff asserts that Mr. Nemec has personal knowledge of facts which are
5    unavailable to Plaintiff because Mr. Nemec co-headed an effort to combine divisions
6    in BAH.  (Doc. No. 98 at 5.)  At first, Mr. Nemec appeared to be cooperating with
7    Plaintiff, but ultimately Mr. Nemec never provided an affidavit. (Id.) Because Plaintiff
8    believes that Mr. Nemec's testimony is relevant to his case, he has requested that the
9    Court extend the discovery deadline in order to allow Plaintiff to take Mr. Nemec's
10   deposition.

11        Though Plaintiff explains why he did not issue a subpoena earlier in discovery,
12   to establish good cause to extend discovery Plaintiff needs to demonstrate why he could
13   not issue a subpoena earlier in discovery.  (Doc. No. 98 at 5-6.) Plaintiff's brief
14   demonstrates that Plaintiff knew of the Nemec action since at least October 2009, when
15   Defendants requested that Plaintiff consent to a multi-district panel.   (Id. at 6.)
16   Plaintiff, then, had since the opening of discovery, January 23, 2013, to issue a
17   subpoena to Mr. Nemec, but Mr. Nemec was not served with a subpoena until May 17,
18   2013, less than a week before the discovery cut off date.  (Id. at 5.)  The subpoena
19   noticed a deposition five days later, on May 22, 2013.  (Id.)  While it is not before the
20   Court whether the subpoena provided adequate notice to Mr. Nemec, it is relevant to
21   the Court's good cause analysis that the reason Plaintiff is claiming good cause, Mr.
22   Nemec's unavailability, can be partially, if not fully, attributed to the short notice of the
23   deposition.

24        Ultimately, it is not Mr. Nemec's unavailability on May 22, 2013, which
25   prevented Plaintiff from taking his deposition prior to the discovery cutoff date.
26   Rather, it is Plaintiff's lack of diligence to subpoena Mr. Nemec until the waning days
27   of discovery which prevented this deposition from occurring prior to May 23, 2013.
28   Because there is no good cause to extend the fact discovery deadline to allow for the

09cv0652-AJB

1    deposition of Mr. Nemec, the Court need not decide whether Mr. Nemec's deposition

2    is relevant to the claims at issue in this matter.  <u>See, e.g.</u>, <u>Johnson v. Mammoth</u>

3    <u>Recreations Inc.</u>, 975 F.2d 604, 609 (9th Cir. 1992).  Accordingly, Plaintiff's request

4    to extend the fact discovery deadline in order to take the deposition of Mr. Nemec will

5    be DENIED.

6    **B. Waiver of Discovery Dispute as to First Request for Production of Documents**

7           The parties' second dispute involves whether Plaintiff has waived his ability

8    to challenge Defendants' objection to the production of documents created after March

9    31, 2005, the day Plaintiff retired.  Judge Skomal's Chambers Rules contain procedural

10    requirements relating to discovery disputes.  The Chambers Rules require parties to

11    bring a discovery dispute to the Court's attention no more than thirty (30) days after the

12    date upon which the event giving rise to the dispute occurred absent good cause.  If the

13    dispute is not brought to the Court's attention by the cut-off date, the parties waive that

14    dispute.

15           In the joint motion, Plaintiff challenges Defendants' objection to Plaintiff's

16    various requests for documents created after March 31, 2005.  (Doc. No. 98 at 6-7.)

17    Plaintiff requested documents from this time period in both his First Request and in

18    Second Request for the Production of Documents.  (<u>Id.</u>)  Plaintiff claims that these

19    documents are necessary to prove his theory of the case.  (<u>Id.</u> at 2.)  Defendants state

20    that they originally objected to the time period in Plaintiff's First Request for

21    Production of Documents, and renewed their objection in their response to Plaintiff's

22    Second Request for Production of Documents.  (<u>Id.</u> at 10, 13-14.)   Defendants'

23    objection is based on their argument that documents created after March 31, 2005, are

24    irrelevant to the case because the documents were created after Plaintiff retired.  (<u>Id.</u>).

25    Defendants further argue that Plaintiff waived his right to challenge Defendants'

26    objection to both requests for the production of documents because Plaintiff failed to

27    timely challenge the objections to the first request.  (<u>Id.</u> at 11.)

28           Plaintiff has waived his right to bring a motion to compel Defendants to

09cv0652-AJB

produce all documents in Plaintiff's First Request for the Production of Documents created after March 31, 2005. It is undisputed that Defendants objected to producing any documents created after March 31, 2005, when they provided Plaintiff with their response and objections on March 9, 2013. (Doc. No. 98 at 6.) Plaintiff requested a conference with Defendants regarding the production on April 9, 2013. (Id.) After the conference, Defendants informed Plaintiff that there would be another upcoming production. (Id.) Plaintiff received the production on April 12, 2013. (Id.) At that point, rather than contact the Court, Plaintiff propounded a second set of discovery requests. (Id.) Therefore, the discovery dispute regarding the time period of documents produced in response to the first request became ripe at the latest thirty days from April 12, 2013, on May 12, 2013.[1] Plaintiff did not bring this discovery dispute to the Court's attention until May 22, 2013. Therefore, the discovery dispute regarding the time period of documents produced in response to the first set of documents requested by Plaintiff has been waived. The Court DENIES Plaintiff's request to compel the Defendants to produce any more documents responsive to Plaintiff's First Request for the Production of Documents.

The Court, however, disagrees with Defendants' assertion that Plaintiff was abusing the discovery process when he issued a Second Request for the Production of Documents. (Id. at 11.) As explained above, because Defendants were still producing responsive documents until April 12, 2013, the Second Request, which was made on April 19, 2013, may still have been within the period in which Plaintiff could have brought the issue to the attention of the Court. (Id. at 7.) Regardless, the Court encourages parties to conduct discovery without constantly resorting to the discovery dispute process. When faced with objections to production requests, the Court encourages the parties to refine their requests so that they are more specific, thus

---

[1] It is not necessary for the Court to determine whether the discovery dispute became ripe prior to May 12, 2013, because, even when taking the date most favorable to Plaintiff, Plaintiff still waived his right to object.

removing the objectionable portions of the request and allowing discovery to continue without the Court's involvement.  This is not a case where the document requests in the second request were exactly the same as the document requests in the first request. While it is true that Defendants objection did not appear to change, and Plaintiff sought many of the same documents, there may be circumstances where the new requests or revelations from other discovery would vitiate the validity of the original objection. The Court will therefore not issue a blanket rule that when an objection is made to a first request and a motion to compel is not brought on that objection, a motion to compel is waived to any subsequent request facing the same objection.  Defendants presented their objections to Plaintiff on May 20, 2013, only 2 days before the parties presented this dispute to the Court and well within the 30 day deadline of June 19, 2013.  (Id. at 7.)  Therefore, Plaintiff's challenge to Defendants' objection to the production of documents created after March 31, 2005, in Plaintiff's Second Request for the Production of Documents is not waived.

**C. Discovery Dispute Regarding Second Request for Production of Documents**

The remaining discovery disputes involve Plaintiff's Second Request for the Production of Documents. Plaintiff's Second Request for the Production of Documents includes 152 document requests.  Plaintiff states that his Second Request largely mirrors documents requested and produced in another action in the Southern District of New York, Nemec and Wittkemper v. Booz Allen Hamilton.  (Doc. No. 98 at 2.) Defendants agree, stating that the first 122 requests from the Second Request are identical to the requests in the Nemec action.  (Id. at 9.)  Plaintiff does not explain how the individual requests mirroring the Nemec requests are relevant, but instead argues that Rich alleges a similar scheme as alleged by the Nemec plaintiffs.  (Id. at 2-3.)  The remaining thirty document requests are new, but largely focus on documents involving

the <u>Nemec</u> action, other actions, or information about BAH after September 2003.[2] (<u>Id.</u>)  Requests 125, 126, 142, 151, and 152 concern documents produced in or related to other actions, such as <u>Nemec</u> and <u>Kocourek</u>.[3] (<u>Id.</u> at 3-4.)  Requests 127, 131, 132, 136, 141, 142, 143, and 148 concern the budget of the company, sale of the company, performance of the company, stock of the company, and events which occurred after September 2003.  (<u>Id.</u>)  Five of the document requests, request 124, 128, 130, 133, and 140, involve documents involving potential witnesses in the instant action and documents used in developing Plaintiff's employee evaluation. (<u>Id.</u>)

The Federal Rules generally allow for broad discovery in civil actions: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  This provision is liberally construed to provide wide-ranging discovery of information necessary for parties to evaluate and resolve their dispute.  <u>Oakes v. Halvorsen Marine Ltd.</u>, 179 F.R.D. 281, 283 (C.D. Cal. 1995). The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1).  <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 610 (N.D. Cal. 1995).  In turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining, and supporting its objections.  <u>DirectTV, Inc. V. Trone</u>, 209 F.R.D. 455, 458 (C.D. Cal. 2002); <u>Oakes</u>, 179 F.R.D. at 283.  The opposing party may satisfy their burden by demonstrating how the discovery request is irrelevant, overly broad, burdensome, or oppressive.  <u>Khalilpour v. CELLCO P'ship</u>, 2010 WL 1267749,

---

[2] Plaintiff withdrew requests numbers 123, 129, 134-135, 137-139, 144-147, and 149-150.  (Doc. No. 98 at 3.)

[3] Plaintiff does not address how the actions identified in requests 151 and 152 are relevant.

1    at *3 (N.D. Cal. Apr. 1, 2010); <u>see also</u> <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S.

2    340, 353 fn. 17 (1978).

3         There are, however, limitations to discovery.  Rule 26(b)(2)(C) requires the

4    Court, on motion or on its own, to limit the frequency or extent of discovery otherwise

5    allowed by the rules if it determines that "the discovery sought is unreasonably

6    cumulative or duplicative, or can be obtained from some other source that is more

7    convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).  The

8    Court must also limit discovery when "the burden or expense of the proposed discovery

9    outweighs its likely benefit, considering the needs of the case, the amount in

10   controversy, the parties' resources, the importance of the issues at stake in the action

11   and the importance of the discovery in resolving the issues."   Fed. R. Civ. P.

12   26(b)(2)(C)(iii).

13                    **1.    Scope of Remaining Causes of Action**

14        The scope of discovery and the issues at stake in this action are determined by

15   the remaining causes of action in this case.  Judge Battaglia's Order Granting in Part

16   and Denying in Part Defendants' Motion to Dismiss Second Amended, and not the

17   Second Amended Complaint, best describes what causes of action remain in this case.

18   (Doc. No. 54.)  The order dismissed Plaintiff's causes of action relating to RICO,

19   ERISA, and the Securities Exchange Act of 1934, holding that Plaintiff had not alleged

20   plausible facts to state a claim for relief.  (<u>Id.</u>)  Discovery requests relating to dismissed

21   causes of action are irrelevant, and therefore should be denied.  <u>See, e.g.</u>, <u>Oppenheimer</u>

22   <u>Fund, Inc. v. Sanders</u>, 437 U.S. 340, 352 (1978).  Therefore, Plaintiff's discovery

23   requests must be relevant to the two remaining causes of action, tortious interference

24   and breach of contract.  (Doc. No. 54.)

25                    a.  <u>Tortious Interference With Contract</u>

26        In the first remaining claim, Plaintiff alleges that Shrader and Garner tortiously

27   interfered with Plaintiff's employment contract.  (Doc No. 38 at ¶¶ 416-432.)  Despite

28   framing the time period of inference as the period between September 30, 2003, and

March 31, 2005, the complaint only alleges one illegal act–an inaccurate employee evaluation in September 2003.  (Id. at ¶¶ 418-420.)  The complaint alleges that such interference was accomplished by Shrader and Garner's false allegations made during a review of Plaintiff's performance on September 11, 2003.  (Id. at ¶ 419.)  The complaint alleges that the statements regarding the Warbreaker project, in particular, were false.  (Id. at ¶ 421.)  Plaintiff further alleges that Shrader and Garner acted as part of a plan to increase his stock ownership and to the detriment of BAH.  (Id. at ¶¶ 428-430.)

In order to prove a claim for tortious interference with contract, a Plaintiff must prove (1) a valid and existing contract between plaintiff and a third party; (2) a defendant's knowledge of the contract; (3) a defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.  Wanland v. Los Gatos Lodge, Inc., 281 Cal. Rptr. 890, 899 (Cal. App. 1991) (citation omitted).  In order for an owner, director, or manager to be subject to liability, a Plaintiff must demonstrate that the manager was not acting to protect the interests of the entity.  Id.  As mentioned in the Court's Order on Defendant's Motion to Dismiss the Second Amended Complaint, the allegation of self enrichment is a necessary allegation to Plaintiff's claim in order to establish an exception to the general rule that directors of BAH, as a party to the contract, cannot be liable under an interference theory. (Doc. No. 54. at 25-26.) Therefore, Sharder and Garner's pursuit of self-interest in 2003 is an issue relevant to the claim.  (Doc. No. 54 at 26.)

### b.  Breach of Contract

Plaintiff's final remaining claim alleges that BAH breached its contract with Plaintiff when BAH, through its agents, provided Plaintiff with a false, negative performance review.  (Doc. No. 38 at ¶¶ 433-450.)  As summarized by Judge Battaglia's Order:

Plaintiff's amended breach of contract claim alleges that the company

10

"was obligated to provide Rich with an assessment of his performance that was based upon and consistent with the opinion and recommendation of numerous co-workers." SAC ¶ 440; *see id.* ¶ 434 (alleging a "series of writings, policy guides, correspondence and other verbalizations" as containing the terms); *id.* ¶ 439 (alleging Plaintiff was not an at-will employee). Plaintiff contends that Booz Allen breached the contract in July and/or September 2003 when it gave him a negative assessment and required him to retire within two years. *Id.* ¶¶ 66-87, 94-102, 437. "The [negative] Assessment Review of Plaintiff in 2003 was not based upon and consistent with the opinions and recommendations of Rich's co-workers; in fact, the recommendation was directly contrary to such opinions and recommendations." *Id.* ¶ 442. He further contends that Defendant Shrader attended the "Assessment Review Group" meeting, criticized Plaintiff's performance on the Warbreaker Program, and urged that he be removed as an officer. *Id.* ¶ 77. The SAC alleges that Shrader's depiction of Plaintiff's performance on Warbreaker was false because it contradicted a prior, contemporaneous, positive assessment. *Id.* ¶¶ 78, 84; *see also id.* ¶¶ 79-81 (alleging Defendants Garner and Doughty also knew the recommendation to retire was based on false statements).

When Plaintiff was confronted with the negative assessment on September 30, 2003, he tried to obtain an explanation, but was rebuffed. *Id.* ¶ 96-102. Plaintiff contends the breach was concealed from him because assessments are strictly confidential, and that he did not learn of the deceit until he met with former colleagues at a reunion in March 2009. *Id.* ¶¶ 74, 83, 93, 104-12. At that time, employees broke the confidentiality obligation and explained the true circumstances of the negative performance. Plaintiff realized that his retirement, and the forced retirements of other senior executives, "might be connected with the shocking decision to split-up and sell the firm" to the Carlyle Group. *Id.* ¶ 103.

(Doc. No. 54 at 22-23.)

The elements of a breach of contract claim are "the contract, plaintiff's performance or excuse of nonperformance, defendant's breach, and the resulting damages to plaintiff." <u>San Mateo Union High School District v. County of San Mateo</u>, 152 Cal. Rptr. 3d 530, 548 (Cal. Ct. App. 2013) (citations omitted).

Plaintiff has also alleged facts which support the delayed discovery rule. (Doc. No. 54 at 23-24.)  In order to demonstrate that the delayed discovery rule is applicable to his breach of contract claim, Plaintiff must show "1) [t]he injury or the act causing the injury, or both, have been difficult for the plaintiff to detect; 2) the defendant has been in a far superior position to comprehend the act and the injury; or 3) the defendant had reason to believe the plaintiff remained ignorant [that] he had been wronged." <u>El Pollo Loco, Inc. v. Hashim</u>, 316 F.3d 1032, 1039 (9th Cir. 2003)

1   (internal quotations omitted).

2          In order to be relevant, the document requests must tend to prove an element

3   of either tortious interference or breach of contract as explained above.  Plaintiff's

4   theory of liability that underlies both remaining claims is Shrader and Garner's alleged

5   scheme in September  2003 to falsify Plaintiff's employee evaluation in order to force

6   Plaintiff into retirement, done with the motive of Defendants to convert BAH from a

7   private partnership to a publicly-traded corporation and to arrogate the enormous profits

8   of that conversion to the detriment of Plaintiff. (Doc. No. 98 at 2-3)

9          **2.     Whether Plaintiff's Requested Discovery Is Relevant**

10         Plaintiff argues that his discovery requests are relevant to his theory of the

11   case that Shrader and Garner used their positions at BAH in order to perpetrate "a vast,

12   illegal scheme" to convert BAH "from a private partnership to a publicly traded

13   corporation and to arrogate the enormous profits of that conversion." (Doc. No. 98 at

14   1.)  Plaintiff alleges that Rich's false employee evaluation in September 2003 was the

15   start of this vast scheme, and suggests that documents from well after 2003 may show

16   why the employee evaluation in 2003 was falsified.  (Id.)  In order to show evidence

17   of the vast illegal scheme, Plaintiff seeks documents produced in other actions that

18   transpired after September 2003.  (Id.)  Plaintiff appears to rest his argument on the

19   assertion that because Plaintiff alleges "similar" schemes, discovery of documents

20   created after Plaintiff's employee evaluation and from other cases is itself "a relevance

21   rationale for compelling production."  (Id. at 3.)

22         Defendants disagree with Plaintiff's assertion, arguing that the requested

23   discovery is not calculated to produce evidence relevant to the breach of Plaintiff's

24   employment contract, but is rather calculated to produce evidence of various other

25   schemes involving stocks and the division and sale of BAH.  (Id. at 8-9.)  Defendants

26   reject the notion that simply because the same vast, illegal plan was alleged in similar

27   actions, discovery regarding all of these other actions is automatically relevant to the

28   instant case.  (Id. at 10.)  Defendants point out that the alleged wrongs in the other

1  actions, such as the sale of part of BAH and shadow stock transactions, were all issues
2  related to causes of actions that were dismissed from Plaintiff's Second Amended
3  Complaint.  (Id.)  Defendants suggest that Plaintiff is not seeking discovery of
4  documents from after 2003 involving schemes alleged in other actions in order to prove
5  the instant case, but instead is casting out a line of discovery in this matter to aid in
6  counsel's attempt to prosecute the separate actions.  (Id. at 8-10.)

7           The Court concurs that the majority of Plaintiff's requests are a fishing
8  expedition into issues that are not relevant to Plaintiff's theory of liability detailed
9  above.  See Vera v. O'Keefe, No. 10-cv-1422, 2012 WL 896175, *5 (S.D. Cal. Mar.
10  15, 2012) (explaining that "discovery must be narrowly tailored").  In his seven pages
11  of briefing, which contains no citation to case law or federal rules, Plaintiff makes no
12  mention of breach of contract, tortious interference with contract, or the elements of
13  these causes of actions; Plaintiff does not even use the word "breach" once.  (Doc. No.
14  98 at 1-7.)  Defendant has proffered that "not a single witness has corroborated Mr.
15  Rich's theory (in fact each has rejected it). . .."(Doc. No. 98 at 9).  Plaintiff has failed
16  to counter with evidence that the alleged secret plan by Defendants to force him out in
17  order for them to profit from a future sale existed in September 2003.  Nor has he
18  demonstrated how the requested discovery will produce evidence tending to prove that
19  Plaintiff's 2003 employee evaluation was falsified.  Plaintiff's belief that discovery into
20  later alleged schemes will help prove that this scheme existed in September 2003 is
21  without foundation.  Plaintiff hopes that the demonstration of alleged later schemes will
22  provide the reason why Defendants may have falsified Plaintiff's employee evaluation
23  in September 2003.  Plaintiff, however, fails to connect how these later documents will
24  prove the alleged scheme pertaining to him existed in September 2003.   This lack of
25  connection to the alleged scheme in 2003 is further re-enforced by the fact that
26  Plaintiffs have no proffered any evidence from  documents already produced to
27  established any proof of said scheme.

28           Instead, Plaintiff's requested discovery focus on other actions with different

09cv0652-AJB

alleged schemes.  The separate scheme alleged in <u>Nemec</u> involves a plan to split BAH into two different divisions and sell off one division contrary to the firm's purported policy of "Always Owned by the Partners." (Doc. No. 38 at ¶¶ 185-205.) The separate scheme alleged in <u>Kocourek</u> involves a plan to compel Kocourek to sell shadow stock. (<u>Id.</u> at ¶¶ 160-172.)  Proving that Shrader and Garner lied about the firm's Always Owned by the Partners policy or that Shrader and Garner forced Kocourek to sell his shadow stock does not prove that there was a breach of Plaintiff's employment contract in September 2003.  The conduct in the later schemes involves activities which are not similar to the alleged falsification of Plaintiff's employee evaluation.[4]  It appears to the Court that Plaintiff is attempting to boot strap evidence obtained in these later alleged divergent schemes to prove up his theory of liability.  What Plaintiff fails to do is proffer evidence that this alleged overall conspiracy to force out shareholders in order to sell the company actually existed as far back as September 2003 and that Plaintiff's alleged false evaluation was part of that scheme.  Therefore, without any such evidence, the requested discovery is not relevant to the issue of whether Plaintiff's employment contract was breached in September 2003.

### 3.    Burden of Discovery Outweighs Benefit

Even assuming the possibility that some documents requested are relevant to prove Plaintiff's alleged scheme, the Court sua sponte has an obligation to limit discovery under Rule 26(b)(2)(C) if the burden of the discovery outweighs the likely benefit. Fed. R. Civ. P. 26(b(2)(C)(iii).  Defendants argue that if they were ordered to produce documents after March 31, 2005, they would be forced to go through their entire production again to produce the documents relevant to Plaintiff's requests. (Doc. No. 98 at 14.)  This task would be a tremendous burden to Defendants, especially in

---

[4]In the Second Amended Complaint, Plaintiff alleged that Defendants falsified the employee evaluations of two other employees, Bruce Pasternack and Reginald Boudinot. (Doc. No. 38 at ¶¶ 122-159.)  Plaintiff has not proffered that the requested discovery will produce evidence regarding these employees' evaluations.

light of Plaintiff's failure to proffer in their briefing any evidence of the alleged scheme to falsify Plaintiff's employee evaluation or a similar scheme. Plaintiff's failure to bring even one document already produced to the Court's attention indicates that his claim that later documents "may" reveal the alleged scheme is no more than a line in the ocean without bait. Defendants should not bear the burden of the fishing expedition when Plaintiff has not shown that there would even be a nibble on the line.

Additionally, for documents produced in other actions, Plaintiff argues that even if the relevancy of the requested documents is tenuous, Defendants' burden in producing the requested documents is so low that the Court should nevertheless order the production of the requested documents. (Doc. No. 98 at 3-4.) In fact, Plaintiff asserts Kocourek's counsel is also counsel for Plaintiff, and Defendant need not even produce documents, but only deem that documents produced in the Kocourek action can also be used in this action. (Id.) Defendants claim that they would experience great expense and burden to "re-do" their entire document production in order to find non-duplicative relevant documents. (Id. at 14.)

The Court finds that the burden outweighs the likely benefit for these document requests. While Plaintiff believes each and every document from the other actions is relevant, Plaintiff has not shown how the alleged schemes in the other actions will prove an element in these two remaining causes of action. Plaintiff fails to prove how the requested discovery will resolve the important issues at stake. Fed.R.CivP. 26(b)(2)(C)(iii). Therefore, except for the discovery requests identified below, the Court DENIES Plaintiff's request to compel Defendants to produce documents responsive to Plaintiff's Second Request for the Production of Documents.

### 4.    Permitted Discovery Requests

Five of Plaintiff's discovery requests, however, are calculated to result in admissible evidence and involve important issues to the case. Three of these requests, numbers 124, 128, and 140, are proper in scope and topic, but two requests, numbers 130 and 133, must be narrowed. Therefore, the Court will order Defendants to produce

1    all non-duplicative documents responsive to these discovery requests as directed below

2    within 10 days of this order.

3         Defendants must respond to request numbers 124, 128, and 140 because these

4    document requests regard issues important to the case which outweigh the burden of

5    production.   In document request number 124, Plaintiff requests documents

6    demonstrating payments made to witnesses and potential witnesses in this case.  Such

7    documents are relevant to show potential witness bias in this matter, and should be

8    produced.  In document request 128, Plaintiff requests documents reflecting Plaintiff's

9    performance as an employee, his plans for retirement, his retirement, the company's

10   plans to replace Plaintiff, and the possible effect of Plaintiff's retirement on the

11   company.  This request seeks documents which may show that Plaintiff's September

12   2003 employee evaluation is false or would be a detriment to BAH, and is therefore

13   relevant.  Document request number 140 requests information BAH possessed in 2003

14   regarding the compensation paid at competitor firms, which was stated as a reason for

15   Rich's termination.  That request pertains to the important issue of whether the decision

16   to recommend Plaintiff's retirement was based on the condition of the relevant

17   employment market and responsive documents should be produced.

18        Plaintiff's request 130 also involves an issue which is important to the

19   remaining causes of action, but the request should be narrowed.  Request 130 requests

20   documents concerning the appraisals or performance valuations of other Booz Allen

21   partners.[5]   Plaintiff has proffered that during his deposition, Shrader testified that

22   although a partner's performance review seems positive, when compared with the

23   _____

24   [5]On June 21, 2013, the parties jointly contacted the Court to present another

25   discovery dispute.  Plaintiff's attorney on the call was William Roth and
     Defendants' attorney was Christian Word.  Plaintiff requested additional documents

26   following the deposition of Shrader regarding employee evaluations of other L3

27   WTB partner reports during the time period 2001 through 2005.  Plaintiff's attorney
     acknowledged that this was a more narrow request than request number 130.

28   Plaintiff clarified his reason why this discovery is relevant during that phone call.

reviews of other partners, it may show that the partner's performance is below par. Therefore, Shrader had to "norm up" Plaintiff's evaluation by comparing it to that of other partners in order to reach the conclusion to recommend retirement.  Shrader went on to explain how he compared evaluations with others to determine an employee's true performance.   Plaintiff has identified the employee evaluations of a group of approximately 15 employees in Plaintiff's employment level, known as L3 WTB partners, he would like Defendants to produce.  Defendants claim that these requests are not relevant, as Shrader already explained how he norms up these evaluations, and this is just another ploy to seek additional confidential information.

The Court agrees that this request is relevant and regards to an issue important in this case.  As mentioned above, whether or not Plaintiff's employee evaluation was falsified is the crux of this case.  If the evaluations Shrader based his recommendation on were similar to those received by other partners, Plaintiff may be able to establish that Shrader's ultimate recommendation was not genuine.  Plaintiff is entitled to see the other employees' evaluations and compare them to his evaluation to determine whether Shrader's "norm up" process was honest.

Defendants, however, are concerned with the confidentiality of these evaluations and claim that the request is overbroad. The Court agrees that the time period is too broad.  In order to determine whether Plaintiff's September 2003 employee evaluation was false, Plaintiff's evaluation should be compared to evaluations of similar employees around the September 2003 time frame.  A time period of 2002-2004 provides a sufficient number of evaluations to compare with Plaintiff's.  The current protective order in this case should otherwise protect the confidentiality of the documents.  Therefore, Defendants must produce the employee evaluations Shrader used in his "norm up" process involving the identified L3 WTB partners during the time period of 2002-2004.  This production should not include each employee's ultimate evaluation, but only the evaluations Shrader reviewed to norm up each employee's performance.

09cv0652-AJB

Document request 133 also requests documents regarding an important issue, but also must be slightly narrowed.  In document request number 133, Plaintiff requests documents concerning BAH's annual budgeting process, including documents which show the "point" amount projection or estimate referred to in the testimony of Ted Shema.   Plaintiff proffered that the "point" budget was a reason for Plaintiff's recommended termination.  (Doc. No. 98 at 3.)  While the request for all of BAH's annual budgeting process is overbroad, documents relating to the "point" budget are relevant if they were a reason for Plaintiff's negative employee evaluation.  Therefore, Defendants must produce documents relating to the "point budget" during the period from 2002 through the end of 2003.

Requests 124, 128, 130, 133, and 140, are directly relevant to the instant case, as explained above, and go to issues relating to either witnesses or elements of the claim.  These are important issues in the case, and the requests are limited in scope, therefore the benefit of producing these documents is greater than the burden.  Defendants have stated, however, that they have produced documents relevant to some of these requests.  (Doc. No. 98 at 14.)  To the extent that the requests are duplicative, Defendants should indicate to Plaintiff which requests are duplicative and need not produce documents already turned over to Plaintiff, but should supplement their response with additional documents responsive to the request, if any.

## IV. CONCLUSION

The Court **HEREBY ORDERS** that:

1.  Plaintiff's request to extend discovery in order to take the deposition of Mr. Nemec is **DENIED**;

2.  Plaintiff's request to compel Defendants to produce documents responsive to Plaintiff's First Request for the Production of Documents created after March 31, 2005, is **DENIED**;

3.  Plaintiff's request to compel Defendants to produce documents responsive to request numbers 124, 128, and 140 in Plaintiff's Second Request for the Production

of Documents is **GRANTED**, and Defendants shall produce documents responsive to these requests within 10 days;

4. Plaintiff's request to compel Defendants to produce documents responsive to request number 130 in Plaintiff's Second Request for the Production of Documents is **GRANTED**, but is limited to the employee evaluations Shrader used in his "norm up" process involving all L3 WTB partners during the time period of 2002-2004, and Defendants shall produce documents responsive to these requests within 10 days;

5. Plaintiff's request to compel Defendants to produce documents responsive to request number 133 in Plaintiff's Second Request for the Production of Documents is **GRANTED** to the extent that the documents reflect the "point budget" referred to in the testimony of Ted Shema on March 20, 2013,from 2002 through the end of 2003, and Defendants shall produce documents responsive to these requests within 10 days; and

6. Plaintiff's request to compel Defendants to produce documents responsive to the remainder of Plaintiff's Second Request for the Production of Documents is **DENIED**.

Failure of any counsel or party to comply with this order, including failure to adequately meet and confer, may result in the imposition of sanctions.

**IT IS SO ORDERED.**

DATED: July 11, 2013

**BERNARD G. SKOMAL**
United States Magistrate Judge

09cv0652-AJB