UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOSTER RICH,<br><br>　　　　　　Plaintiff,<br>v.<br><br>RALPH W. SHRADER, et al.,<br><br>　　　　　　Defendants. | Civil No. 09cv652 AJB (BGS)<br><br>ORDER GRANTING<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT<br><br>[Doc. No. 108] |

　　　Before the Court is Defendants' Motion for Summary Judgment on the two remaining claims in Plaintiff's Second Amended Complaint ("SAC"). (Doc. No. 108.) The two remaining claims in the SAC are (1) breach of contract against Defendant Booz Allen Hamilton, Inc. and (2) tortious interference with contract against Defendants Ralph Shrader and Joseph Garner. The Court finds the motion suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Accordingly, no appearances are required and the hearing date is hereby vacated. For the reasons set forth below, the Court GRANTS Defendants' motion.

**I.　BACKGROUND**

　　**A.　Factual Background**

The following factual allegations are taken from Plaintiff's SAC.  Defendant Booz Allen Hamilton, Inc. (hereinafter "Booz Allen" or "BAH") is a consulting firm with both commercial and government divisions.  Booz Allen hired Plaintiff in 1987 to work for an anticipated twenty years. (Doc. No. 38 at 104.)  As a senior executive with military connections, Plaintiff handled the Warbreaker program from 1992 to 1993. (*Id.* at 18.)  By September 2003, Plaintiff was a Lead 3 partner. (*Id.* at 19.)

In September 2003, Booz Allen evaluated Plaintiff's job performance pursuant to a new procedure instituted in August of that year. In the New Assessment Process, an assigned assessor would interview the reviewed partner's peers and prepare an assessment document.  This document was to be reviewed and discussed by a group of ten or so partners in an Assessment Review Group ("ARG") meeting.  Afterwards, a Partner Assessment Summary form ("PAS") is prepared making recommendations to the Partner Compensation Committee ("PCC") on the partner's progression.  Only the PAS and a brief summary of the ARG would be provided to the employee evaluated.  (*Id.* at 17.)

According to Plaintiff, Defendant Shrader (Chairman and Chief Executive Officer) falsely attacked Plaintiff's performance on the Warbreaker program during the ARG meeting. (*Id.* at 18.)  Defendant Garner allegedly knew these comments were false, but failed to speak up when he had a duty to do so. (*Id*. at 18.)  The assessment document stated that Plaintiff was only "meeting" or "partially meeting" expectations in five job performance categories appraised.  (Doc. No. 108, Ex. 4, "2003 Appraisal".)  The PAS stated that Plaintiff was not recommended to continue in his current position, which contradicted previous statements and evaluations according to Plaintiff. (*Id.* at 20.)  The PAS further recommended that Booz Allen and Plaintiff initiate a retirement plan, with the proposed goal that Plaintiff retire sometime between October 2004 and October 2005. ( Doc. No. 108, Ex. 12, "Partner Assessment Summary".)  Plaintiff had two choices: (1) he could comply with the retirement recommendations or (2) risk termination down the road without retirement benefits. (Doc. No. 38 at 20.)  Plaintiff chose the

former and retired on March 31, 2005 despite being notified that termination could be reversed if he desired to stay longer at Booz Allen. (*Id.* at 102.)

Throughout his employment with Booz Allen, Plaintiff participated in the company's Officers' Stock Rights Plan ("Stock Plan"). By the time of his retirement, Plaintiff owned 30,500 shares of Booz Allen stock. (*Id.* at 2.) Booz Allen stock was not publically traded, all outstanding shares were owned by 280 shareholders who could only sell their shares back to Booz Allen. The terms of the Stock Plan provided that:

> In the event an Officer ceases to be an employee of the Company or its subsidiaries by virtue of retirement, death, or disability, the Company shall have the right, exercisable at any time following the expiration of 24 months from such event, to purchase all or any portion of the Common Stock held by Officer (or the Officer's estate) at the Repurchase Price in Effect at the date of exercise of the Company's rights.

(Doc. No. 48, Ex. B, ¶ 7(b) (approved in 1988); Ex. A ¶ 10 (as amended in 2006). Exactly two years after Plaintiff retired, Booz Allen exercised this right and repurchased all of Plaintiff's stock at "book value," ($148 per share) on March 31, 2007. Plaintiff received over $4.5 million. (Doc. No. 38 at 90, 101.)

In July 2008, Booz Allen entered into a contract to sell its government division to the Carlyle Group in a leveraged buyout. (*Id.* at 65) Outstanding shares were repurchased at $794 per share, significantly higher than book value. (*Id.* at 23-24). Plaintiff consulted with colleagues and concluded he had been forced to retire as part of an overall scheme to deny him the opportunity to participate in the Carlyle transaction. Plaintiff seeks the $21 million he could have received for his accumulated stock had he remained employed at Booz Allen for three more years and participated in the Carlyle sale. Plaintiff alleges that individual Defendants engineered a secret plan to split Booz Allen into two divisions, take control of the company by getting rid of opposing partners, and capture the excess market value for personal gain.

### B.     Procedural Background

Plaintiff initiated this action on April 1, 2009 against Defendants Shrader, Garner, and Booz Allen, along with other defendants who are no longer a part of this action. (Doc. No. 1.) Defendant then filed a First Amended Complaint ("FAC") on December 8,

2009. The Honorable Michael M. Anello granted Defendants' motion to dismiss the FAC, dismissing with prejudice three claims brought pursuant to Delaware law, but dismissing without prejudice all other claims. (Doc. No. 36.) The case was then transferred to this Court's docket.

On October 16, 2010 Plaintiff filed his SAC alleging causes of action for: (1) violations of the Racketeer Influenced and Corrupt Organizations Act "(RICO"), 18 U.S.C. § 1961 *et seq*.; (2) conspiracy under RICO; (3) breach of Employee Income Retirement Act ("ERISA") implied covenant of fair dealing; (4) breach of ERISA fiduciary duty; (5) securities fraud; (6) tortious interference with contract; and (7) breach of contract. (Doc. No. 38.) On September 22, 2011, this Court granted in part and denied in part Defendant's motion to dismiss the SAC. (Doc. No. 54.) The Court dismissed with prejudice the RICO, ERISA, and securities fraud claims.

Plaintiff's only surviving claims are (1) tortious interference with contract against Defendants Ralph Shrader and Joseph E. Garner and (2) breach of contract claims against Booz Allen. (*Id.*) Fact discovery completed on May 23, 2013. (Doc. No. 97.) Defendants now seek summary judgment as to these two remaining claims.

## II.  LEGAL STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(e) (West 2006). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). In considering the motion, the court must examine all the evidence in the light most favorable to the non-moving party and "all justifiable inferences are to be drawn in his favor." *Id.* at 255, 267. When the moving party does not bear the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477

U.S. 317, 325, 106 S. Ct. 2548 (1986). Summary judgment must be granted if the party responding to the motion fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Celotex*, 477 U.S. at 322, 324. To avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, the non-movant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in their favor. *See id.*

## III. DISCUSSION

Plaintiff's remaining claims are (1) breach of contract and (2) tortious interference with contract. First, Plaintiff alleges that the company "was obligated to provide Rich with an assessment of his performance that was based upon and consistent with the opinion and recommendation of numerous co-workers." (Doc. No. 38 at 102.) Booz Allen breached this when it gave him a negative assessment and required him to retire within two years as it was contradictory to co-workers' opinions and recommendations. (*Id.*) Second, Plaintiff alleges that Defendants Shrader and Garner interfered with his employment contract with Booz Allen when they made false statements about his job performance in the 2003 ARG meeting. (*Id.* at 97-101.) According to Plaintiff, Shrader and Garner took these actions to "enrich themselves" to the detriment of Booz Allen, thus falling under the exception to the general rule that a party (or its agents) to the contract at issue cannot be liable on an interference theory. (*Id.* at 100).

Defendants argue that not one piece of evidence produced during the course of discovery supports Plaintiff's theory and claims, entitling Defendants to summary judgment. (Doc. No. 108 at 1.) Defendants raise several arguments in support.

### A. Plaintiff's Breach of Contract Claim is Time Barred

In their motion to dismiss the FAC, Defendants argued that the breach of contract claim accrued in September 2003, when Plaintiff received the assessment that recommended he retire. Defendants asserted that the four year statute of limitation barred the claim. Cal. Civ. Proc. Code § 337. Judge Anello agreed, finding that the FAC did not allege facts to trigger the delayed discovery rule, which could have tolled the limitations period if Plaintiff could show the breach was committed in secret and that the plaintiff could not reasonably discover his injury until a later time. (Doc. No. 36 at 7.) Plaintiff was granted leave to amend, and this Court found that the SAC sufficiently alleged facts to invoke the delayed discovery rule.[1] (Doc. No. 54 at 24.)

Defendants now renew their objection in this motion for summary judgement, arguing that "discovery did not substantiate Mr. Rich's attempt at artful pleading" and that he testified he suspected some wrongdoing in September 2003 when he received his review. (Doc. No. 108 at 14-15.) However, Plaintiff contends that under California law for wrongful termination of employment, the statute of limitation runs from the date of actual termination of employment, i.e., March 31, 2005. Thus making the initial filing of the complaint, March 31, 2009, timely under the four year statute of limitation. (Doc. No. 117 at 1.) In the alternative, Plaintiff argues this Court should deny summary judgment based on the delayed discovery rule. (*Id.* at 15.)

#### 1. Statute of Limitation for Breach of Contract

California imposes a four year statute of limitations on suits for a breach of written contract. Cal. Civ. Proc. Code § 337. Generally, a cause of action for breach of contract "accrues at the time of the breach" and the statute begins to run "regardless of whether any damage is apparent or whether the injured party is aware of the right to sue." *Perez-*

---

[1] The Court noted Plaintiff's inconsistent and self-defeating allegations contained in the FAC and the fact that Plaintiff's amended pleading omits those self-defeating passages. However, the Court was bound to only consider the amended complaint before it and thus did not consider Plaintiff's original claims that he knew of the breach at the time it occurred. (*See* Doc. No. 54 at 8.)

*Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006) (citing *Niles v. Louis H. Rapoport & Sons*, 53 Cal. App. 2d 644, 651 (Cal. Ct. App. 1942).

Throughout his SAC, Plaintiff alleged the breach of contract occurred when Booz Allen gave him a negative assessment in violation of its obligation to provide him with an assessment consistent with the opinion and recommendation of co-workers.[2] (Doc. No. 38 at 21-25, 101-104.) According to Plaintiff, the negative Assessment Review in 2003 directly contradicted prior, contemporaneous, and positive reviews. (*Id.* at 18, 102.) Thus, Booz Allen "breached the employment contract by failing to perform its obligation to provide Rich with an Assessment Review required by the terms of its contract with Rich." (*Id.* at 102)

However, in a complete about-face, Plaintiff's opposition to summary judgment now contends that the breach was based upon Plaintiff's wrongful termination. (Doc. No. 117 at 1, 14-15.) Relying on *Mullins v. Rockwell Int'l Corp.*, Plaintiff argues that the statute of limitation should run from the date of actual employment termination. 15 Cal. 4th 731, 743 (Cal. 1997) (holding the statute of limitations in a breach of contract action based upon constructive termination begins to run when the employee is actually terminated); *see also Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 490 (stating a breach of implied contract not to terminate without good cause "occurred at time of termination"). By relying on *Mullins*, Plaintiff appears to now assert he was constructively terminated. *Mullins*, 15 Cal. 4th at 737 (emphasizing that "constructive discharge occurs only when an employer terminates employment by forcing the employee to resign").[3]

---

[2] Plaintiff asserts the terms of his employment contract are "memorialized in a series of writings, policy guides, correspondence and other verbalization, including the partner code of conduct, and core values of honesty and integrity." (Doc. No. 38 at 101.) Defendants continue to dispute the existence of a valid contract but do not seek summary judgment on this issue as of yet.

[3] The *Mullins* Court explained that the breach of contract alleged in that case is the actual termination of employment. 15 Cal. 4th at 741. In the present case, the breach alleged is the 2003 negative Assessment Review that was contrary to the terms of Plaintiff's purported employment contract, not termination.

This constructive termination theory was certainly news to the Court.[4] A review of the SAC does not yield a well articulated claim for breach of contract based on constructive termination that would meet the plausibility standard for pleadings. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Plaintiff never alleged termination of his employment, whether actual or constructive, as the breach. *Mullins*, 15 Cal. 4th 731, 743 ("termination normally is the breach alleged"). The Court's prior order on the SAC and Judge Anello's dismissal order on the FAC was based upon an alleged breach for the 2003 negative Assessment Review, not constructive termination. If Plaintiff believed this was an oversight or mistake on the Court's part, Plaintiff should have sought leave to amend his complaint to properly allege constructive termination. However, Plaintiff failed to do so. The case is now four years old, discovery has ended, and we are at the stage of dispositive motions before trial. Plaintiff may not, at the eleventh hour, attempt to snatch victory from the jaws of defeat by asserting a new theory for relief. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (stating a plaintiff cannot pursue a new theory of liability after the close of discovery as it would prejudice defendants who had no notice and thus did not develop defenses to the new theory).

Thus, Plaintiff's breach of contract claim did not accrue when he resigned in March of 2005. Instead, the statute of limitation started in September of 2003 when the alleged breach occurred, unless Plaintiff can benefit from the delayed discovery rule.

2.      <u>Delayed Discovery in a Breach of Contract Claim</u>

Under the delayed discovery rule, California courts attempt to ameliorate the harshness of a strict statute of limitation in claims involving "fraud, difficult-to-detect injuries, or the breach of a fiduciary relationship. *Perez*, 468 F. Supp. 2d at 1134. The discovery rule has been applied to breach of contract actions not involving fraud for "breaches, which can be, and are committed in secret, and, moreover, where the harm

---

[4] The only time Plaintiff's SAC mentions constructive termination is in regards to Partner Joyce Doria, who Plaintiff alleged was "frozen out of all management discussion; was not permitted to attend meetings; and was, in effect, constructively terminated." (Doc. No. 38 at 25.)

flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." *April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 832 (Cal. Ct. App. 1983). In his alternative argument, Plaintiff contends his claim is not time barred under the discovery rule.

Applying this rule, a cause of action accrues when the plaintiff discovers or could have discovered, through the exercise of reasonable diligence, all of the facts essential to his cause of action. *Id.* at 826. Two overarching principles guide a court in assessing whether the discovery rule is applicable in a given case. *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 5 (Cal. Ct. App. 2003). First, "plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed." *Id.* at 5-6. Second, "defendants should not be allowed to knowingly profit from their injured's ignorance." *Id.* Plaintiff contends the discovery rule is applicable as "Booz Allen concealed the reasons for Rich's termination by not making any reference to the wrongful application of the 'up or on' rule in the debrief meeting and thereafter."[5] (Doc. No. 117 at 15.) Moreover, the ARG meetings were confidentially conducted, no notes or minutes were taken and preserved, and therefore he did not know the basis of his negative recommendations. (*Id.* at 7-9.)

A court looks to "three characteristics of appropriate applications of the discovery rule: (1) the injury or the act causing the injury, or both, have been difficult for the plaintiff to detect; (2) the defendant has been in a far superior position to comprehend the act and the injury; and (3) the defendant had reason to believe the plaintiff remained ignorant he had been wronged." *Perez*, 468 F. Supp. 2d at 1135 (internal quotation marks omitted) (citing *Gryczman*, 107 Cal. App. 4th at 5). The discovery rule is appropriate for breaches committed secretly where it would be unreasonable to require a

---

[5] In his Opposition, Plaintiff contends he was erroneously reviewed under the "up and on" policy, inapplicable to his position as a Lead 3 partner. Plaintiff did not learn of this concealed fact until Partner Ted Shema testified as a sworn witness. (Doc. No. 117 at 15.) However, Plaintiff's argument is irrelevant to the Court's analysis. As alleged, the breach was the inconsistent negative assessment review, it is immaterial which policy Plaintiff was reviewed with, so long as the end result remained the same...i.e, an inconsistent and contradictory negative review.

contracting party to continuously monitor whether the other party is performing some act inconsistent with the terms of the contract. *April Enterprises*, 147 Cal. App. 3d at 832.

It is important to once again emphasize that the alleged breach in the instant action is the negative Assessment Review, purportedly in contravention with positive reviews Plaintiff had received, thus a violation of Booz Allen's "obligation to provide Rich with an assessment of his performance based upon and consistent with the opinion and recommendation of numerous co-workers." (Doc. No. 38 at 102.)  This is the breach alleged in the SAC, and this is the breach theory Plaintiff is bound to.  Plaintiff states that he was confronted with the negative assessment on September 30, 2003, and at that point in time, "Rich became aware of the negative statements in the PAS." (*Id.* at 22-23.)  Plaintiff goes on to assert there was a divergence between the prior written assessment "and the seemingly contradictory PAS summary recommendation. (*Id.* at 22).  By Plaintiff's own allegations, he was aware of the injury (the initiation of a retirement plan) and the cause of the injury (the negative performance review) when he was debriefed in September 2003. Plaintiff's sworn testimony also shows that he knew of the inconsistencies by the time he received his PAS in September 2003.  He states that "those complimentary statements aren't consistent with the outcome of the summary." (Rich Dep. at 150-151, Mar. 13, 2013, Doc. No. 108, Ex. 2).

Accordingly, the Court finds the discovery rule inapplicable to the facts of the present case.  Even construing the evidence in the light most favorable to Plaintiff, the record before the Court shows that Plaintiff's injury or the cause of the injury was not "difficult to detect."  *See Perez*, 468 F. Supp. 2d at 1135.  Although the breach itself, the September 2003 assessment review meeting, occurred behind closed doors; Plaintiff soon learned of the outcome of this meeting during his debrief a few weeks later.  While Plaintiff did not know the factual circumstances and exactly what transpired during the meeting, he knew, based on the PAS recommendation that he retire, there were inconsistencies with the positive reviews contained in his written assessment document.  While Defendants were in a superior position to comprehend the act and injury, Plaintiff did not

remain blindly ignorant to the most obvious hints of wrongdoing. Plaintiff had actual knowledge of the outcome of the breach, the inconsistent negative recommendations, and actual knowledge of his injury, the early retirement recommendation, from the September debrief.

By this time in 2003, Plaintiff was aware of the essential facts to support a breach of contract claim. Under the discovery rule, "[a] plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (Cal. 1988). To establish a claim for breach of contract, a plaintiff must show: (1) a valid contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damage to plaintiff. *Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal. App. 4th 1602, 1514 (Cal. Ct. App. 2011). By September 2003, Plaintiff: (1) knew he had a valid employment contract requiring Booz Allen to give him a performance assessment based upon and consistent with the opinions and recommendations of peers;[6] (2) had been performing as a partner; (3) knew he had received a negative review inconsistent with previous assessments and the opinions and recommendations of peers; and (4) knew of the initiation of a retirement plan. Again, even though Plaintiff did not know the exact facts and what transpired during the ARG meeting, he essentially knew a breach of his contract term occurred based on the inconsistent PAS and debriefing. Moreover, Plaintiff further learned of wrongdoing when, according to Plaintiff, a couple of weeks after the debrief, Mr. Salameh approached him at an off site location to apologize.[7] (Rich. Dep. at 119-120.) Mr. Salameh told Plaintiff "[t]hey made me change your summary to force you out." (*Id.*) Thus, by the end of 2003, Plaintiff could have

---

[6] Whether a valid contract indeed existed is still disputed by Defendants, however as they have not asked the Court to inquire into this on summary judgment, the Court construes as true, Plaintiff's allegation of a valid contract.

[7] According to the SAC, Mr. Salameh was Plaintiff's assessor who was to provide Plaintiff with a debriefing of his assessment. (Doc. No. 38 at 21.)

formulated a claim, supported by these essential facts, that was plausible on its face. *See Twombly*, 550 U.S. at 570.

However, Plaintiff failed to do so. Plaintiff stayed with Booz Allen until 2005 and only commenced this action in 2009. The Court finds the delayed discovery rule inapplicable to the facts at hand as a matter of law. Reasoned jurists could not disagree with this determination. Accordingly, Plaintiff's claim accrued in 2003 when he discovered enough of the essential facts to support a breach of contract claim. The 2009 initiation of this lawsuit is well past the four year statute of limitation and consequently, dismissed.[8] The Court GRANTS Defendants' motion for summary judgment on the breach of contract claim.

### B. Plaintiff's Tortious Interference with Contract Claim

Under this claim, Plaintiff alleged "Defendants Shrader and Garner caused Plaintiff's employment contract with BAH to be terminated on March 31, 2005 ..." (Doc. No. 38 at 97.) These individual defendants essentially made false statements during the ARG meeting, and caused other reviewing partners to advise the PCC that Plaintiff was not performing at a level consistent with continued employment. (*Id.* at 98.) As a result of this "deceit" by Shrader and Garner, the PCC approved the "forced retirement of Rich." (*Id.*)

#### 1. Statute of Limitation for Tortious Interference with Contract

California law imposes a two year statute of limitation for tortious interference with contract claims. Cal. Civ. Proc. Code § 339(1); *Kiang v. Strycula*, 231 Cal. App. 2d 809, 811-12 (Cal. Ct. App. 1965). A tortious interference claim typically accrues "at the date of the wrongful act." *DC Comics v. Pacific Pictures Corp.*, 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013) (quoting *Trembath v. Digardi*, 43 Cal. App. 3d 834, 836 (Cal. Ct. App. 1974)). In the instant case, the wrongful act occurred during the September assessment meeting.

---

[8]As the Court has disposed the breach of contract claim on timeliness grounds, the Court declines to address Defendants' other grounds: (1) Plaintiff's assessment was consistent with co-workers opinions and (2) Plaintiff's voluntary decision to retire severed the causal connection.

## 2. Applicability of the Delayed Discovery Rule

As the Court has already noted, the discovery rule postpones the accrual of an action "until the plaintiff discovers, or has reason to discover, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (Cal. 2005). A plaintiff has reason to discover a cause of action when he "has reason at least to suspect a factual basis for its elements," that is the "generic elements of wrongdoing, causation, and harm." *Id.* This is an objective inquiry, "if a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation." *Dias v. Nationwide Life Ins. Co.*, 700 F. Supp. 2d 1204, 1222-23 (E.D. Cal. 2010) (internal quotations omitted) (citing *McCoy v. Gustafson*, 180 Cal. App. 4th 56, 108 (Cal. Ct. App. 2009)).

Once again, Defendants attack Plaintiff's tort claim on timeliness grounds, arguing the lawsuit was initiated well past the two year limit and the discovery rule is inapplicable.[9] Specifically, Plaintiff failed to exercise diligence despite having suspicions of wrongdoing. (Doc. No. 108 at 17-18.) According to Defendants, Plaintiff sat on his hands, failed to properly investigate the reason for his negative review, and did not avail himself to the company's appeal process. (*Id.*) On the other hand, Plaintiff alleged his investigation was thwarted by Defendants' misrepresentations. Plaintiff testified he attempted to learn the reason for his negative recommendation however no one provided him with information given the confidential nature of ARG meetings. (Doc. No. 117 at 11.)

Where a defendant moves for summary judgment by affirmatively defending that the applicable limitations period ran out before the complaint was filed and plaintiff

---

[9] In his order dismissing the FAC, Judge Anello found Plaintiff's statements to be self defeating as the FAC admitted Plaintiff "was aware, on September 11, 2003, that Defendant Shrader was not a member of his assessment group [and] that Shrader made false accusations at the meeting," therefore Plaintiff's attempt to invoke the discovery rule unsuccessful. (Doc. No. 36 at 7.) The SAC omits these allegations. As the SAC supercedes the FAC, this Court cannot rely on the non-operative FAC to grant Defendants relief.

relies on the delayed discovery rule, the plaintiff has the burden to show a triable issue of one or more material facts exists as to that defense. *Gryczman*, 107 Cal. App. 4th at 6-7. Here that triable issue is Plaintiff's diligence: did Plaintiff diligently investigate the role individual defendants played during that ARG meeting?  This would have been factual information needed for Plaintiff to bring his interference claim.  Based upon the parties' testimonies, and construing the evidence in the light most favorable to Plaintiff, as the Court must in the instant motion, Plaintiff has demonstrated that at the very least a triable issue as to his diligence exists.

The Court cannot declare, as a matter of law, the tortious interference of contract claim is time barred. Whether Plaintiff exercised reasonable diligence under the circumstances, to invoke the discovery rule, is a question of fact for a jury to decide.

### 3. Evidence Does not Corroborate Plaintiff's Theory

Plaintiff's claim against Defendants Shrader and Garner survived a motion to dismiss as Plaintiff sufficiently alleged enough facts to invoke the exception to the general rule that agents of a corporation, acting in official capacities, cannot be liable for inducing a breach of the corporation's contract. (Doc. No. 54 at 25-26.)  Specifically, Plaintiff alleged the two individual defendants acted in their personal financial interest, forcing Plaintiff to retire to increase their own payout from the Carlyle transaction.  The Court accepted those allegations as true in ruling on a 12(b)(6) motion.  However, on summary judgment, the non-moving party cannot rely on conclusory allegations and must point to factual evidence to demonstrate a triable issue.

Defendants assert that Plaintiff has not pointed to a shred of evidence to support this improper financial gain theory.  Indeed, according to Shrader's deposition testimony, Shrader did not entertain a plan to sell Booz Allen's government division until late summer of 2007. (Shrader Dep. at 166, May.15, 2013, Doc. No. 108, Ex. 8.)  Partner Dennis Doughty testified that such a scheme was "ridiculous" and if such a plan did exist, Doughty "would have been the first guy shot." (Doughty Dep. at 156, May 3, 2013, Doc. No. 108, Ex. 2.) (explaining he opposed any plan to divide the firm).

Plaintiff has failed to refute any of the evidence presented, his Opposition does not even attempt to address Defendants' arguments.  Instead, the Opposition Memorandum "addresses only Booz Allen's contention that it is entitled to summary judgment on Rich's breach of contract claim." (Doc. No. 117 at 2, n.3.)  Despite steadfastly defending this theory for the past four years of this litigation, Plaintiff appears to acknowledge the inability to substantiate this theory.  Defendants demonstrated a legitimate reason to grant summary judgment on the tortious interference claim.  As Plaintiff has failed to meet his burden to counter with opposing evidence, the Court finds no genuine issue of material fact and GRANTS summary judgment to Defendants.

## IV. CONCLUSION

For the reasons stated above, the Court hereby GRANTS summary judgment in favor of Defendants on Plaintiff's two remaining claims.

The Clerk of Court is instructed to close this case.

IT IS SO ORDERED.

DATED: December 9, 2013

_____
Hon. Anthony J. Battaglia
U.S. District Judge